UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

JOSE LUIS MATUTE-DUARTE

No. 1:25-mj-00098-JCN

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jeffrey Rankin, Border Patrol Agent of the United States Border Patrol, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Border Patrol Agent with the United States Border Patrol, Department of Homeland Security (DHS), assigned to the Houlton Sector, Jackman Station, in Jackman, Maine. In June 2024, I transitioned to a Border Patrol Agent-Resident Agent, Jackman Station-Greenville Post. I have been a Border Patrol Agent for 18 years and I have been assigned to the Jackman Station since 2008. Prior to my transfer to Jackman, Maine, I was a Border Patrol Agent at Tucson, Arizona Border Patrol Station.

2. I make this affidavit in support of a Criminal Complaint charging JOSE LUIS MATUTE-DUARTE with one count of Illegal Re-Entry of Alien After Removal, in violation of Title 8, United States Code, Section 1326(a). The information contained in this affidavit is based on my own investigation, my review of materials and reports prepared by other law enforcement officers and conversations with involved personnel, as well as my training and experience as a Border Patrol agent.

1

## STATEMENT OF PROBABLE CAUSE

3. On March 10, 2025, at approximately 12:38 p.m., I stopped at a convenience store in Brownville, Maine, in my unmarked government vehicle. I was in full uniform, which had U.S. Border Patrol insignia on both sleeves.

4. While walking towards the store, I noticed two large bucket trucks with "TTS Tree Service, LLC" written on the side. Both bucket trucks were bearing New York license plates. I also saw a Toyota pick-up truck with New York plates parked near the entrance of the store with the same "TTS Tree Service, LLC" on the side of the truck. I saw an individual standing behind the truck and when he saw me, he immediately looked down at the ground and avoided eye contact with me. I later identified this individual as Jose Luis MATUTE-DUARTE (hereinafter MATUTE-DUARTE).

5. I then went inside the store. After leaving the store, I saw that this individual, MATUTE-DUARTE, was now in the driver's seat of the Toyota pick-up truck. MATUTE-DUARTE now had his hood pulled up over his head. In walking back to my vehicle, I saw that there were two people in each bucket truck and one of them had his head laying on top of his crossed arms which were on the dash with his face concealed.

6. I recently received information from multiple law enforcement sources that during this past summer and fall, contract crews that worked on utilities were suspected of using or hiring illegal aliens as part of their work crews. I also received information that the vehicles associated with these work crews were registered out of New York. Based on the suspicious conduct that I observed, and this information, I approached the driver's side of the Toyota pick-up truck.

7. When I was in the driver's line of sight, MATUTE-DUARTE did not look at me. I tapped on the window and MATUTE-DUARTE opened the driver's side door because the window was inoperable.

8. I identified myself as a Border Patrol agent and asked the individual how he was doing. MATUTE-DUARTE replied: "Good." I asked him where he was from. MATUTE-DUARTE said: "New Jersey." I then asked him what country he was a citizen of. MATUTE-DUARTE then said that he did not speak a lot of English. I asked MATUTE-DUARTE in the Spanish language what country he was a citizen of, and MATUTE-DUARTE said Honduras. When I asked if he was in the United States illegally, MATUTE-DUARTE said he "did not want to answer that."

9. I asked MATUTE-DUARTE if he had any identification, and he said yes. MATUTE-DUARTE was visibly shaking, and he took out an id and handed it to me. The identification was a New Jersey driver's license for MATUTE-DUARTE, with a picture that matched the individual I was talking to.

10. I then asked the passenger questions relating to his citizenship. The passenger admitted being a citizen of Mexico. I attempted to use my handheld service radio to contact Special Operations Supervisor Eric Dorais, but I was not able to make contact because I was in an area with poor radio communications.

11. I then told MATUTE-DUARTE to hand me the vehicle keys and to wait in the truck. I contacted SOS Dorais to perform a records check on MATUTE-DUARTE.

12. As I was walking back to the pick-up truck, I saw that the bucket trucks were leaving the parking lot. When I arrived at the pick-up truck, the passenger was gone. MATUTE-DUARTE said he had left and gestured towards the bucket trucks.

13. I then asked MATUTE-DUARTE if he was in the United States illegally, and he said yes. He again confirmed that he was in the U.S. illegally.

14. At that time, I asked MATUTE-DUARTE to step out of the vehicle, I placed him in handcuffs and searched him and escorted him to my vehicle. MATUTE-DUARTE was detained for immigration purposes.

15. I learned that a records check on MATUTE-DUARTE showed that he was previously removed from the United States and that the removal order would be reinstated. Afterwards, I transferred MATUTE-DUARTE to Border Patrol Agent Alexander Sender, who transported MATUTE-DUARTE to the Jackman Border Patrol station for processing.

16. Subsequently, MATUTE-DUARTE was advised of his *Miranda* rights and indicated that he would like a lawyer and the interview was concluded.

17. According to immigration records, MATUTE-DUARTE illegally entered the United States from Mexico and was arrested in Texas in 2015. MATUTE-DUARTE was removed on May 18, 2015, in Harlingen, Texas, to Honduras.

18. No record was found in any immigration database showing that MATUTE-DUARTE has any legal status in the United States or any claim to citizenship in the United States, and he did not obtain the express consent of the Secretary of the U.S. Department of Homeland Security to reapply for admission to the United States.

19. MATUTE-DUARTE was notified of his right to communicate with a consular officer from Honduras, and MATUTE-DUARTE said he did not wish to contact his consular office.

Based on my training and experience, and supported by the foregoing facts, I have probable cause to believe MATUTE-DUARTE has violated Title 8, United States Code, Section 1326(a).

I, Jeffrey Rankin, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under pains and penalties of perjury.

Dated at Bangor, Maine this 13th day of March 2025.

_____
Jeffrey Rankin, Border Patrol Agent
United States Border Patrol

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: **Mar 13 2025**

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
*Printed name and title*